IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TODD S. FENCHEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22-cv-04931 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ZION-BENTON HIGH SCHOOL ) | |
| DISTRICT #126, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Todd Fenchel was a tenured high school teacher employed by Defendant Zion-Benton High School District #126 ("District"). When the COVID-19 pandemic forced the District to transition to remote schooling, Fenchel used the Zoom video-conferencing platform to teach his students. On October 21, 2020, Fenchel was logged into one of his Zoom classes when he experienced an urgent need to use the bathroom. He had his laptop with him as he hurried to the bathroom but thought he had turned off its camera. As it turned out, Fenchel's laptop camera remained active, and his entire class was able to view him relieving himself. As a result of this incident, the District concluded that Fenchel could no longer continue teaching. Despite negotiating a deal in which he resigned in lieu of being fired, Fenchel has brought the present action alleging that the District discriminated against him due to his disability, irritable bowel syndrome ("IBS"), in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* The District now moves for summary judgment, claiming that this lawsuit is barred by the release in Fenchel's separate agreement. (Dkt. No. 29.) For the reasons that follow, the District's motion is granted.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Fenchel began working for the District as a Driver's Education teacher in 2006, and he had become tenured by the time of the events relevant here. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRDSF") ¶ 8, Dkt. No. 36; Def.'s Resp. to Pl.'s Statement of Additional Facts ("DRPSAF") ¶ 1, Dkt. No. 42.) Throughout his life, Fenchel struggled with IBS; when he experienced flareups of his IBS, he would experience the urgent need for a bowel movement. (DRPSAF ¶¶ 2–3.)[1]

On October 21, 2020, Fenchel experienced a flareup while leading his 5th period advisory class. (PRDSF ¶¶ 14–15; DRPSAF ¶ 6.) Due to the ongoing COVID-19 pandemic, District classes were being taught remotely during that time. (PRDSF ¶ 15.) Thus, Fenchel was teaching ten students virtually using Zoom. (PRDSF ¶ 14; DRPSAF ¶ 6.) In the middle of the class, Fenchel began to experience some distress in his stomach and knew he needed to get to the bathroom quickly. (PRDSF ¶ 18; DRPSAF ¶ 6.) He took his laptop with him to the bathroom because he was expecting a guidance counselor to speak to his class that day and wanted to be available to approve their request to join the Zoom class. (DRPSAF ¶¶ 6, 8.)

Believing that he had turned off the laptop's camera, Fenchel proceeded to defecate. (PRDSF ¶¶ 14, 18; DRPSAF ¶¶ 6–7, 9.) Unbeknownst to Fenchel, his camera remained on and broadcast the scene to the entire Zoom class. (PRDSF ¶¶ 14–15, 18.) Most students quickly realized what was happening and averted their eyes. (*Id.* ¶ 18.) However, at least two students

---

[1] While the District objects to Fenchel's factual statements regarding his IBS as outside the limited scope of discovery authorized in connection with the present motion, the Court overrules its objections. Given that Fenchel's sole claim in this case alleges that the District discriminated against him based on his disability, *i.e.*, IBS, the Court believes that facts related to that condition are properly considered.

watched enough to see Fenchel's exposed genitals. (PRDSF ¶ 14, 18; DRPSAF ¶ 10.) One student took two screenshots of the incident, although the picture did not capture Fenchel's exposed genitals. (PRDSF ¶¶ 15, 18; DRPSAF ¶¶ 10, 12.) No student spoke up to alert Fenchel that they could see him using the toilet, and therefore he resumed teaching when he had finished, unaware of his mistake. (DRPSAF ¶¶ 6–7, 9.)

Later that same day, several of Fenchel's students contacted their principal, Christopher Pawelczyk, to notify him of what had transpired. (PRDSF ¶¶ 15–16.) Pawelczyk then called Fenchel to inform him that his class had seen him using the toilet. (DRPSAF ¶ 7.) While Pawelczyk seemed to understand that the incident was simply an unfortunate accident, he nonetheless informed Fenchel that he would be investigating it further. (*Id.* ¶ 10.) After the broader school community learned of the incident, the District came to believe that Fenchel could no longer continue as a teacher. (PRDSF ¶¶ 19–20.) Fenchel was soon advised by his union president, Kelly Regnier, that the District intended to fire him. (PRDSF ¶¶ 21–22; DRPSAF ¶¶ 11, 13.)

In an effort to stave off the damage a firing would have on Fenchel's future career prospects, Regnier began to negotiate a deal on Fenchel's behalf whereby he would agree to resign. (PRDSF ¶¶ 22–23; DRPSAF ¶¶ 14–15.) While Fenchel was resistant to resigning, Regnier made clear that he faced a binary choice: resign or face termination. (PRDSF ¶ 26.) On November 13, 2020, Regnier emailed Fenchel a copy of an agreement ("Separation Agreement") whereby Fenchel would agree to resign but would receive an additional month's pay and be permitted to keep his health insurance through the end of the school year. (PRDSF ¶¶ 27–28; DRPSAF ¶ 16.) The Separation Agreement also contained a clause under which Fenchel agreed to release all claims arising out of or relating to his employment with the District ("Release").

(PRDSF ¶¶ 27, 39.) Regnier told Fenchel that he had until noon on November 16, 2020, to sign the Separation Agreement. (PRDSF ¶ 28; DRPSAF ¶ 16.)

Shortly after he received the Separation Agreement, Fenchel spoke with Regnier by phone. (PRDSF ¶ 29; DRPSAF ¶ 16.) While disputed, Fenchel claims that, during the call, Regnier warned him that if he did not sign the Separation Agreement, "they" intended not only to fire him but also to report the incident to the Illinois Department of Children and Family Services ("DCFS"), which could lead to him having to register as a sex offender. (PRDSF ¶¶ 30, 32; DRPSAF ¶¶ 17–19.) By "they" Fenchel understood Regnier to be referring to the District. (DRPSAF ¶ 18.) There is no dispute, however, that Fenchel only heard the purported threat through Regnier and the District never made such a threat to him directly. (PRDSF ¶¶ 31, 33, 36.) Terrified by the prospect of a DCFS investigation and the possibility of having to register as a sex offender, Fenchel felt that he had been left with no choice but to sign the Separation Agreement. (DRPSAF ¶ 20.) Thus, on November 16, 2020, Fenchel returned the signed Separation Agreement to the District. (PRDSF ¶ 38; DRPSAF ¶ 20.) The District approved his resignation the following day. (PRDSF ¶ 38.)

Despite signing the Separation Agreement, which included the Release, Fenchel brought the present action setting forth a single claim under the ADA. Specifically, Fenchel alleges that he suffers from a disability—namely, IBS—and the District failed to reasonably accommodate that disability when it determined that he could no longer remain as a District teacher following his IBS-induced accident on October 21, 2020.

## DISCUSSION

The District seeks summary judgment as to Fenchel's ADA claim, arguing that the claim is barred by the Separation Agreement's Release. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that

4

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011).

While Fenchel does not dispute that the language of the Release encompasses his ADA claim, he contends that the Separation Agreement (and thus the Release) is void and unenforceable because he signed it under duress. Duress "is an affirmative defense to a contract, which releases the party signing under duress from all contractual obligations." *Krilich v. Am. Nat'l Bank & Tr. Co. of Chi.*, 778 N.E.2d 1153, 1162 (Ill. App. Ct. 2002). The condition of duress will be found to exist "where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will." *Hurd v. Wildman, Harrold, Allen & Dixon*, 707 N.E.2d 609, 614 (Ill. App. Ct. 1999). Establishing duress requires demonstrating that "the threat has left the individual bereft of the quality of mind essential to the making of a contract." *Id.* (internal quotation marks omitted). "The acts or threats complained of must be wrongful; however, the term 'wrongful' is not limited to acts that are criminal, tortious, or in violation of a contractual duty. They must extend to acts that are also wrongful in a moral sense." *Krilich*, 778 N.E.2d at 1162.

According to Fenchel, he signed the Separation Agreement under duress because he was induced by the threat of being reported to the DCFS and the consequences likely to follow such a report, including possibly being labeled a sex offender. There is a substantial question as to whether the District ever made such a threat. Viewed in the light most favorable to Fenchel, the evidence shows that it was only Regnier, acting in her capacity as Fenchel's union representative, who mentioned the possibility of the District reporting Fenchel to the DCFS. *See Hyde v. Lewis*, 323 N.E.2d 533, 538 (Ill. App. Ct. 1975) ("[W]hen a third party who is a stranger

5

to the agreement supplies the wrongful inducement, the contract will be set aside only if the beneficiary of the duress had knowledge of the wrongful inducement."). But even assuming *arguendo* that the District itself directly threatened to report Fenchel to the DCFS if he did not sign the Separation Agreement, Fenchel's claim of duress would nonetheless fail as a matter of law.

Had the District threatened to report Fenchel to the DCFS if he did not sign the Separation Agreement, that threat would not constitute the type of "wrongful" threat necessary to establish duress. Certainly, considering the circumstances of the incident, the notion of reporting Fenchel to the DCFS appears to be an overreaction. It is readily apparent that what happened was not a sex crime but rather a particularly embarrassing example of the kind of mistakes that sometimes occurred during that period of the COVID-19 pandemic when people were struggling to adapt to virtual schooling and work. Nonetheless, Fenchel's mistake was solely a consequence of his own actions and did result in the exposure of his genitals to minors. *See Golden v. McDermott, Will & Emery*, 702 N.E.2d 581, 588 (Ill. App. Ct. 1998) ("[I]t is not enough for economic duress that the plaintiff be in great financial or personal difficulty. The defendant must have been in some way responsible for that difficulty."). Moreover, Fenchel does not claim that the District threatened to make a ***false*** report to the DCFS but instead threatened only to report what actually occurred. The Court cannot find that threatening to make a truthful report to the DCFS is wrongful. *See, e.g.*, *Hurd*, 707 N.E.2d at 614 (explaining that duress cannot be based upon "threatening to do that which a party has a legal right to do").

Further, it is generally the case that "a party's act in signing a contract remains voluntary, even if he signs because of straitened circumstances, as long as he had ample time for inquiry, examination and reflection." *Hyde*, 323 N.E.2d at 538. Despite Fenchel's protests that he was not

6

given adequate time to review the Separation Agreement, he was given a full weekend to decide whether to sign. As the District notes, education personnel such as Fenchel, Pawelczyk, and other District employees, were mandated reporters under Illinois law and therefore were required to report to the DCFS when they had "reasonable cause to believe" a child has been abused. *See* 325 ILCS 5/4(a)(4). With time to reflect, a veteran educator like Fenchel could not possibly have failed to apprehend that the District had no right to bargain away its reporting obligations in contract negotiations. This is especially so given Fenchel's education and experience.[2]

Moreover, news of Fenchel's bathroom incident had spread throughout the larger school community. Thus, Fenchel should have been aware that a concerned parent would have been free to report the incident on their own even if the District agreed not to file a report. Finally, Fenchel may have reasonably feared the prospect of the incident being reported to the DCFS, but it should have been readily apparent to him that the District had no control over whether the DCFS would investigate that report or whether a prosecutor might ultimately pursue charges; presumably, the DCFS and law enforcement would have quickly recognized the incident as a deeply unfortunate accident. *See Hurd*, 707 N.E.2d at 615 ("[P]laintiff's subjective fears, in our view, do not amount to economic duress.").

In short, the Court is able to conclude, even after drawing all reasonable inferences from the evidence in Fenchel's favor, that no reasonable jury could find that Fenchel executed the Separation Agreement under duress.[3] To the extent the District made any threat, it was not

---

[2] Fenchel earned an undergraduate degree in physical education and three master's degrees related to education. (PRDSF ¶ 10.)

[3] In his opposition to summary judgment, Fenchel also argues that the Release is void under a provision of the Age Discrimination in Employment Act, 29 U.S.C. § 626(f)(1)(F)(i). However, that provision is irrelevant to this case, which asserts only a claim of disability discrimination under the ADA.

wrongful. And Fenchel was given ample time to consider the many reasons why the threat should not have been a factor in his decision to sign the Separation Agreement. Accordingly, the Release is enforceable and precludes Fenchel's ADA claim.

## CONCLUSION

For the foregoing reasons, the District's motion for summary judgment (Dkt. No. 29) is granted. The Clerk will enter Judgment in favor of the District.

ENTERED:

Dated: September 26, 2024

_____
Andrea R. Wood
United States District Judge

8